UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DECHERT,

Plaintiff,

-v-

THE BANK OF NEW YORK MELLON,

Defendant.

23-CV-7625 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Robert Dechert brings this *pro se* action for breach of contract and willful

misfeasance against Defendant The Bank of New York Mellon ("BNYM") for allegedly

improperly allocating proceeds in a mortgage loan trust. BNYM has moved to dismiss the

complaint for, among other reasons, failure to join necessary parties. For the reasons that follow,

Plaintiff is ordered to join all other trust beneficiaries as required parties to this action within four

weeks of the date of this Order. Because dismissal under Rule 12(b)(7) is premature and the

Court may not proceed to the merits before attempting to add required parties, BNYM's motion

to dismiss is denied without prejudice to renewal.

I.      **Background**

        A.      **Factual Background**

        Unless otherwise noted, the following facts are taken from the Complaint and are

assumed to be true for the purposes of considering BNYM's motion to dismiss. *Fink v. Time

Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). Dechert is a noteholder beneficiary of a

trust comprising mortgage loans that is managed by trustee BNYM. (ECF No. 1 ("Compl.")

¶ 4.) In administering a trust comprising mortgage loans, BNYM's primary responsibilities are

to collect loan payments and to distribute trust income to beneficiaries. (*Id.* ¶¶ 2-8.) Those

1

responsibilities are governed by the trust Indenture, which became operative on March 22, 2006, corresponding to the issuance of several different classes of notes which entitle their holders to interest payments.  (*Id.* ¶ 4.)  The more "senior" notes (such as A-1, A-2, and A-3) are designed to be lower-risk and carry a lower rate of interest payments.  (*Id.*; ECF No. 13 ("Mem.") at 3.)  The "junior" notes (such as M-1, M-2, and M-3) work the opposite way: they are designed to be higher risk and carry a higher rate of interest payments.  (Mem. at 3.)  Dechert holds an A-2 note.  (Compl. ¶ 4.)

Two sets of BNYM's obligations relate to how BNYM must allocate "subsequent loss" and "subsequent recoveries" among beneficiaries.  (*Id.*  ¶¶ 5-8.)  Subsequent loss occurs when a loan owned by the trust is liquidated to an amount insufficient to fully repay the principal.  (*Id.* ¶ 5.)  Subsequent recoveries occur when, after a loss, the trustee recovers additional proceeds.  (*Id.*)  Both subsequent losses and subsequent recoveries must be allocated across the notes that comprise the mortgage loan trust, and it is BNYM's responsibility to administer those allocations.  (*See id.* ¶¶ 6-7.)  The parties do not disagree that the allocation is governed primarily by the trust's Indenture, which contains provisions specifying the order in which the principal of each class of notes is to be depleted or increased in the event a subsequent loss or subsequent recovery occurs.  (*See* Mem. ¶¶ 2-3.)  The parties also do not disagree about the precise order of allocating subsequent *losses*—everyone acknowledges that M notes are to be depleted before A notes, and that among the A notes, A-3 are to be depleted first, then A-2, and then A-1.  (*See id.* at 5.)  Instead, the parties dispute the allocation of subsequent *recoveries*.

Citing Section 3.29 of the Indenture, Dechert contends that subsequent recoveries are to be allocated to increase—by the amount of any previous loss—the principal balances of A-3

2

notes, then A-2 notes, and then A-1 notes.[1]  (Compl. ¶ 8.)  Citing the Indenture as a whole as well as related documents and the parties' course of performance, BNYM contends that its obligation as trustee is to allocate subsequent recoveries among the A notes in the reverse order: A-1, then A-2, and then A-3.  (Mem. at 14-21.)  Which interpretation controls is significant to the beneficiaries, since the note principals with the highest priority to a subsequent recovery will gain more than the classes of notes with relatively lower priority, corresponding to increased interest.  (*See, e.g.*, Compl. ¶ 12.)  Claiming to have the correct interpretation, Dechert asks this Court to order BNYM to conform its allocations of subsequent recoveries to the literal text of Section 3.29, affording A-3 notes the highest priority, followed by A-2 and A-1 notes.  (*Id.* ¶ 13.)

### B.       Procedural History

Dechert, proceeding *pro se*, filed a Complaint against BNYM on August 25, 2023, asserting breach of contract and willful misfeasance in violation of New York law.  (Compl. ¶ 15.)  BNYM filed a motion to dismiss the complaint on November 2, 2023.  (ECF No. 12.)  In its briefing, BNYM put forward two primary arguments: first, that Mr. Dechert failed to join other trust beneficiaries as required parties, and second, that its current allocation of subsequent recoveries is proper.  (Mem. at 1-2.)  Dechert filed an opposition to the motion to dismiss on November 16, 2023.  (ECF No. 18 ("Mem. Opp.").)  BNYM filed a reply in further support of its

---

[1] The text of Section 3.29 reads: "Allocation of Subsequent Recoveries.  On each Payment Date, the Indenture Trustee shall allocate the amount of the Subsequent Recoveries, if any, first to increase the Note Principal Balances of the Class A-3, Class A-2 and Class A-1 Notes, sequentially, in that order, to which Applied Realized Loss Amounts have been previously allocated, in each case by not more than the amount of the Unpaid Realized Loss Amount of such Class, and then to increase the Note Principal Balance of the Subordinate Notes to which Applied Realized Loss Amounts have been previously allocated, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4 and Class B-1 Notes, in that order, in each case by not more than the amount of the Unpaid Realized Loss Amount of such Class."  (ECF No. 14-1 at 20.)

motion to dismiss on December 14, 2023. (ECF No. 21 ("Reply").) On December 13, 2013, BNYM filed a petition for judicial instruction under Article 77 of the New York Civil Practice Law and Rules, requesting instruction on the proper allocation of subsequent losses and recoveries under the Indenture. (ECF No. 23 ("Letter").)

## II.    Discussion

An action may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). To determine whether dismissal is warranted, Rule 19 establishes a two-part inquiry. First, the court must determine whether an additional party is required by Rule 19(a). *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015). A party may be required if, in its absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A party may also be required if it has an interest in the subject of the action such that its absence would "impair or impede [its] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If a required party "has not been joined as required," the court must order the joinder. Fed. R. Civ. P. 19(a)(2). Such an order gives a party the opportunity to join required parties if feasible, as "the [initial] nonjoinder of someone described in Rule 19(a) does not result in a dismissal if that person can be made a party to the action." 7 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1611 (4th ed. 2019). Upon a finding of infeasibility, the action must be dismissed for failure to join only if the Court concludes that the party not joined is indispensable, meaning "in equity and good conscience," the action cannot proceed with the existing parties alone. Fed. R. Civ. P. 19(b).

"Ordinarily, when a beneficiary brings suit against a trustee on behalf of the trust, other beneficiaries 'should be joined as parties, either as plaintiffs or as defendants, if their interests

4

would be affected by the decree.'"  *Coan v. Kaufman*, 457 F.3d 250, 260 (2d Cir. 2006) (quoting

3 Austin W. Scott *et al.*, The Law of Trusts § 214 (4th ed. 2001)); *see also Settlement Funding,*

*LLC v. AXA Equitable Life Ins. Co.*, No. 06-CV-5743, 2010 WL 3825735, at *9 (S.D.N.Y. 2010)

("In New York, courts have generally held that trust beneficiaries are 'necessary' parties to

disputes arising in relation to a trust.").  That Dechert requests a remedy that will require BNYM

to prioritize allocating funds to a different group of noteholders raises the possibility of

inconsistent adjudications or double recovery, since future actions by other noteholders may

compel BNYM to use a different allocation than the interpretation Mr. Dechert offers here.  That

situation is precisely the reason for Rule 19(a)(1)(A)'s requirement, as "[w]hen a particular fund

or property right is involved in litigation, federal courts must be especially sensitive to the danger

of contradictory judicial orders relating to that fund or right."  Wright, *et al.*, *supra*, § 1618.

While trust actions do not *always* raise Rule 19(a) issues, such as when the plaintiff's requested

relief would not affect the interests of other beneficiaries,[2] "if their interests would be affected

and an adequate state forum exists, then dismissal under Rule 19(b) may be appropriate."  *Id.*

(citing *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149 (7th Cir. 1979)).  Setting aside

for now the question of outright dismissal, that Dechert seeks relief that would alter the rights of

other beneficiaries, especially in light of an ongoing proceeding in New York state court

---

[2] There may be other cases in which trust beneficiaries are not required parties under
Rule 19(a), such as class actions with adequate representation or those brought by the
Government, where the usual rule may be relaxed.  *See Coan*, 457 F.3d at 260-61 (holding out
the possibility of adequate representation as an exception to the ordinary requirement to join trust
beneficiaries); *Marshall v. Snyder*, 572 F.2d 894, 902 (2d Cir. 1978) ("In this case, in which the
Secretary is the statutory plaintiff and sues in the interest of the beneficiaries, it is neither
necessary nor appropriate that any individual beneficiaries be joined as parties.").  Neither of
those situations is present here, however, since neither Dechert nor BNYM—themselves not
Government parties—is an adequate representative of all the trust beneficiaries' interests.  And
BNYM could not be, since Mr. Dechert's request pits beneficiaries' interests in direct conflict,
such as between A-1 note holders and A-2 note holders.

5

specifically designed to safeguard their interests, is sufficient to conclude that the other trust beneficiaries are required parties under Rule 19(a)(1)(a).

BNYM argues further that joinder required by Rule 19(a) is infeasible because "it is likely that the notes are widely held, raising a substantial chance that at least one noteholder is a citizen of Florida, the same state of Plaintiff's citizenship," in which case this Court would lack subject matter jurisdiction under 28 U.S.C. § 1332. (Mem. at 11.) But because Dechert has not yet had an opportunity to attempt joinder, the conclusion that there is a "substantial chance" that joining the other beneficiaries would destroy complete diversity is premature. Indeed, as BNYM argues in the alternative, "Plaintiff should be ordered to join the other investors as necessary parties . . . ." (*Id.*) That is all Rule 19(a) permits the Court to do at this stage. Accordingly, the motion to dismiss based on the infeasibility and indispensability of joining other trust beneficiaries as parties, as well as the ultimate merits of Mr. Dechert's claims, must be denied.

## III.    Conclusion

For the foregoing reasons, Plaintiff is ORDERED to join to this action all required persons or entities holding interests in the trust governed by the March 22, 2006 Indenture within four weeks of the date of this Order. Defendant's motion to dismiss is DENIED without prejudice to renewal if Plaintiff fails to comply with this Order.

The Clerk of Court is directed to close the motion at ECF No. 12.

SO ORDERED.

Dated: July 22, 2024
      New York, New York

_____
J. PAUL OETKEN
United States District Judge